And counsel, for the appellant, when you're ready to proceed, we'll be happy to hear from you. Thank you, Your Honor. Good morning. My name is Celia Ruman, and I represent Odece Hill. I'm going to try to reserve two minutes for rebuttal. The district court erred in denying Mr. Hill's habeas petition because the decision of the state court was contrary to an unreasonable application of clearly established federal law, and also because there was an unreasonable determination of the facts in this case. Clearly established law prohibited the admission of the victim's statement through Ms. Rasile, a forensic nurse, that was taken pursuant to structured questioning at the behest of law enforcement. Law is clearly established when the principle articulated to the claim being raised can be applied to the claim being raised without tailoring or modifying, and that's the case here. Could I ask one preliminary question? Yes. When we do the clearly established law analysis, do we have to take it basically on a question-by-question basis? And the reason I ask that is that the only question, as I understand it, that prompted the answer that was admitted at trial was, why are you here, right? That question, it seems to me, you know, you could argue that the primary purpose of that particular question, at least, was mainly for treatment as opposed to evidence gathering. Just simply, why are you here? It's an open-ended question that the nurse said, you know, that's every medical practitioner would start with that. So is that, if we just isolate on that one question, it seems to me you have an uphill battle. But is that the wrong frame through which to look at this? I think that it is. If the court looks at the Crawford and Davis case, what they talk about is analyzing the interrogation. They don't say each question by question. And they talk about looking at all the factors. The Bryant case focuses, this court, on the objective analysis. And it says that the analysis is done considering the circumstances of the encounter. And the statements and actions of the parties that it provides. So clearly, the court is anticipating that it's more than simply each question, is that question designed for a particular purpose? Here, what we know is, even as to that question, Ms. Rasile stated that everything she did was to gather evidence. And in her testimony, she distinguished, in part, between the assault history and the medical history. And she talked about this question, and talking about it in relation to the assault history. But even if it was a, quote-unquote, medical question, she clearly stated that she asked all of the questions to try to discern where she would find evidence. Unfortunately, in a sexual assault, the victim's body is where the crime evidence is likely to be found. And here, the forensic nurse was working solely from the sex exam evidence kit. I mean, that is the label on the document that she's working from. She testified it's a state form. She testified that she's a contract employee for the county. And if the court looks at her testimony, what she says repeatedly is, I don't remember anything. I don't remember anything that happened here. What I have is what's on the paper. And in fact, in response to at least one question, she doesn't even say what happened. She says, it says, she is reading this form to the jury. There's no distinction between that and admitting this form. I mean, you know, the Melendez and Bullcumming case talk about the admission of a form that's created solely for litigation purposes. Question, counsel. Could medical personnel in a sexual assault case construct a rape kit without violating Crawford? I think it would be a harder question in some ways because this was clearly for that purpose. And we know that specifically because if you look at ER 46, Ms. Rasile affirms that the entire copy of the chart regarding this exam is for the responding officer. This is a document that was created for litigation. In some ways, it's stronger than the affidavits that are prepared that were at issue in the Melendez and the Bullcumming case because those circumstances, you're just saying what you've put down is true. So is the answer to my question no? I think I would argue that it could be the same thing because if they're creating a sex evidence kit, the whole purpose they're doing that is to have something for litigation. So I would say there's really not a distinction that would matter in that circumstance. But in this case, we've got even stronger information. Can I ask you, does it make any difference that the victim was treated in the emergency room first before she saw the nurse? And further, that the nurse had a conversation with the officer about sort of getting a, what was it, a misdigest view of? I absolutely believe those things are important to consider in this case for a couple of reasons. Someone who's a medical practitioner, before they go in to see a patient, would have to have medical information. This nurse didn't seek out medical information. What she sought out was information from law enforcement about what happened. The fact that it's in a hospital could arguably be relevant and something for this court to consider because there are cases that talk about emergency room physicians' questions. That's obviously not the circumstance here. But what we do know here is that Ms. Rasile considered herself to be outside of the emergency room staff. How do we know that? We know that because she wasn't acting as a medical practitioner here. She wasn't asking questions that were designed to elicit, you know, as a medical practitioner who's exercising their judgment. Well, I guess I just disagree with you on that. Didn't the nurse testify, basically, that I'm a nurse first in this posture and an evidence-gatherer second? So I don't think that can be reconciled with what you just said. I think you're right, Your Honor. She did say that she was a nurse first. Those were her words. But if you look at the whole circumstance of how she behaved, it's not just her subjective intent that matters here. What matters is all the circumstances that are going on. And that's why I think, you know, she specifically said at one point that after this was done, she released Ms. Jorick back to the treating staff. With a recommendation that treatment, possible treatment for STD, right? There was, there's a box on the form that she checked. But even Ms. Rasile didn't view that as providing treatment because in the box for whether she provided treatment, she said no. So she didn't view that as providing treatment. She, as the form required, went through and checked every box and said, okay, no, I'm not gonna give treatment, but I'll talk to somebody about it. Was she asked that at trial? Was she asked what? I'm sorry, Your Honor. Why did you check that box? Did you check that box to ensure that there was follow-on medical treatment or you just checked that box to check the box? I'm sorry, I can't remember specifically, but I don't remember any instance where she said that what I remember from her testimony is her repeatedly saying every question was asked, even whether this eight-month pregnant woman was menstruating, was because it was on the form, even whether the race of the defendant, which has absolutely no tie to any kind of medical treatment. It's affirmative evidence that the whole purpose of this is to document things for law enforcement. I'm running short of time. I think I'll reserve the remainder of my time for rebuttal. Okay, very good. Let's hear from the state. Yes, we've allowed counsel in the past to do that. Is that right? Yes. All right. Good morning, your honors, and may it please the court. My name is Casey Ball. I'm an assistant attorney general here on behalf of respondents. This court should affirm the district court's denial of habeas relief because the state court's decision was not contrary to, nor an unreasonable application of clearly existing federal law. Edpedeference is controlling here. The only way that he'll can receive relief is if he shows that the decision is, for example, contrary to Supreme Court precedent. There's two ways to do that. The Arizona Court of Appeals determined that the information through the nurse's testimony was, in fact, non-testimonial, correct? Correct, it applied. Is that a factual determination or a legal determination? It is a legal determination under a totality of the circumstances test. The Michigan v. Bryant primary purpose test is a totality of the circumstances test. And as this court and the Supreme Court have both repeatedly emphasized, the broader the test is, the more discretion the state court has and the more deference this court should give under Edpede review. You can understand our difficulty in dealing with cases like this, not wanting to unnecessarily impede law enforcement in its effort to solve crimes of this type. But, for example, what business, non-testimonial business is it to let the jury know what the race was of the perpetrators? I think this actually goes to Judge Watford's first question, which is, can we go on a question-by-question basis? And Michigan v. Bryant explicitly stated that that is correct, that you look at it a case-by-case. I think they said, we recognized in Davis a conversation which begins as an interrogation to determine the need for emergency assistance can evolve into testimonial evidence. So, I agree there's really no medical purpose to the race of the perpetrator. That is certainly evidence gathering. But the question that was challenged here on appeal is, tell me why you're here. That's at the very beginning. And as Michigan v. Bryant also recognized, preliminary questions often elicit non-testimonial statements. And so, we need to focus the Michigan v. Bryant primary purpose test on the challenge statement itself. Is there evidence in the record that the prosecution made an attempt or did, in fact, tailor this information before presenting it to the jury? Tailored what was in the report, or? What came out in front of the jury? Let me just, did the form itself get introduced to the jury? No, the form itself was not admitted. They did... It went down question-by-question, though. They did go question-by-question, and they did have, there's a diagram with the injuries. They did bring that up for demonstrative purposes, have the nurse come down and explain the injuries as she was reading off the chart. And she was reading off the report quite a bit, because she didn't have a memory of something that happened 10 years ago. But, again, under the primary purpose test, the Court of Appeals reasonably determined that that initial question, tell me why you're here, is a very standard question that's asked in every medical exam, whether there's a sexual assault. Don't you have to look at that in the total context of what happened that day? Yes, Michigan B. Bryant is a totality of the circumstances test. I mean, before the nurse interviewed her, she had been treated by the emergency staff, correct? Correct. They had been trying to save the baby. She had gone into premature labor. Trying to stabilize her. And trying to stabilize her. And then after that's over, just three hours after the assault, a nurse comes in and performs the second. But she met with the officer first, though, didn't she? That's not incredibly clear in the record. The pre-trial readings... Well, she testified to that. She wanted to get a Reader's Digest view of what had happened. Oh, yes, the nurse met with the detective. Sorry, I was unclear. I thought you meant the victim. No, I meant the nurse. I'm sorry. Yeah, the nurse did. She got the Reader's Digest version, which you would do in any situation with a sexual assault. You want to kind of know. If you put this subsequent question, what happened to you, in context, she really knew what had happened to her, right? She got a Reader's Digest, but you still need... She knew she was there for a criminal... She had been sexually assaulted. Correct, and she's a sane nurse, so she knows that when she's walking into the room, she's going to be doing a sexual assault examination. But we look at this from an objective perspective. So what was the purpose of the victim's statement where she gives an account of what happened to her to the question, tell me why you're here? That question came right after a medical history was taken where she was giving prescriptions that she'd had the last time she'd had a hepatitis shot, her blood rate, her resting heart rate, all of that was taken. What diagnosis did Nurse Roselli make? The nurse made three diagnoses. The first was sexual assault by patient history, which is just based on what the patient told her, sexual assault. The second was some minor bruising. I think I have the exact report rather than guess. So this is on ER 46, examiner's diagnosis, sexual assault by history, moderate genital and no anal injury by exam, and then third, evidence of penetration of the vulva by exam and laboratory findings. So we've got three diagnoses. The nurse testified that as she's doing the exam, this isn't a quick examination. It takes about an hour and 15 minutes. She is examining the general area based on the patient's statements of the sexual assault, and is touching them, trying to establish tenderness, any injuries, and documenting them, both for the purposes of diagnosis and treatment and also for evidence gathering. One of the things that Petitioner emphasizes repeatedly is the idea that, well, the nurse didn't treat the patient, and so these must have been for evidence gathering. I don't think, for one, the Court of Appeals didn't necessarily find that the nurse herself treated. She did make a recommendation for prophylactic STD medication, but. In response to the question why you are here, why are you here, the only evidence that ties Mr. Hill to the crime? No, there are some counts. So the statement basically established the acts and the number of acts that occurred, but there is other evidence that ties it to at least some of those acts. It's not really well-developed in the briefing which counts would maybe need to go away if this was reversed. We've identified a few in the answering brief, but it would really need to be briefed more. But we have at least one sex assault on another victim, so that one for sure would stay. One of the men, they fondled his genitals with the gun. One of the sex assaults on this victim occurred in the kitchen in front of the other witnesses and was testified to. A co-defendant pleaded guilty to at least two counts and testified that the defendant, or at least provided statements before trial and then testified inconsistently. Let me ask the question this way. Without the response to why are you here, does at least some of the counts against Hill fall? Likely at least some of them, just because that establishes the maximum number. There are other evidence and other DNA for at least some of the counts, but we would need probably more briefing to elucidate which ones. But to get to that harmless error, this court would first have to find that no reasonable jurist could find that the Court of Appeals reasonably applied to the primary purpose test for Mishkin v. Bryant. Real quick, I want to touch on the Bull Cumming and Melendez-Diaz cases. The first time this comes up is in front of this court. It's never been addressed before. And I think for good reason. Bull Cumming and Melendez-Diaz are very different cases. Both of those involved lab reports that were created for the sole purpose of prosecution. Melendez-Diaz in particular required, I think a state statute required the lab tech to have it notarized. And the purpose of that was so that it could replace the lab tech's testimony in trial. And that's exactly what Crawford was trying to avoid, is the state going out and developing evidence that would replace trial testimony. Same with Bull Cumming. In Bull Cumming, the government conceded that the statements were testimonial, and the question was, is there a forensic exception to testimonial statements? So neither of those cases is really on point. They're certainly not materially indistinguishable from the facts of this case. And so where the Court of Appeals is applying, the Supreme Court president at the time, Bryant v. Michigan, Davis and Crawford, is doing this totality of the circumstances test and weighing the factors, doing a very methodical job, consulting other state court cases that involve more similar facts with same nurses, and comes to a reasonable conclusion that that first statement to tell me why you're here is for medical treatment purposes, objectively, that is a reasonable decision that fair-minded jurists could disagree on. And that is preclusive of habeas relief under AEDPA. Unless this court has any other questions, I can sit down. Okay, very good. Thank you, Your Honor. Thank you for your argument. Counsel for the appellant, you have, I think, a couple of minutes left for rebuttal. Go ahead. This thing here seems to underestimate the emphasis that the Court of Appeals put on the medical care, that there was medical care provided. It made a finding that medical care was provided. There was no medical care provided. That was a key fact. In fact, the Court used it to distinguish the Hartford v. Connecticut case that's very similar to this one, and said here, she got medical treatment. She didn't get medical treatment here. That is a very important point. It's not the only point the court considers, but it is a very important point that the court considers. The government, the state here argues that there was three diagnoses given. The first one is not a medical diagnosis. It's sexual assault by history. She was told this was sexual assault. She also adds the last one, which is crime lab reports pending, or something like that, as a diagnosis. So in her diagnosis, what she's saying is, here's what I was told, here's what I saw, and here's what I'm doing. And three of those go to giving evidence in the case. And I think the order of them is important. The first one is simply that there was a sexual assault that she was told about, and that's the problem here. This case was not a strong case against Mr. Hill. This case, the trial occurred 10 years after the offense. And as Mr. Hill testified, from his perspective, this was not a memorable day that he was trying to testify about. There wasn't strong evidence of him committing this offense. In fact, all of the people who were present, that we know were present in the apartment at the time that were alive to testify, none of them identified Mr. Hill. The three victims who were there didn't identify Mr. Hill. Even Mr. Russell, in his testimony, didn't identify Mr. Hill when he testified under oath. There is DNA evidence, but DNA evidence doesn't tell you when the DNA got there. It tells you that the DNA is there. And that's important in this case because no one identified him. And the one person he couldn't cross-examine is the one that gave the most damning evidence in this case, the most graphic evidence of what occurred, the only one who could give evidence that this was, in fact, a sexual assault because the people who were outside described things that were ambiguous in some circumstances as to what was going on in the room. And so this was not a strong case. Even the state court recognized that this was a weak case against Mr. Hill as to some of the offenses, but this evidence was not limited. If you look at the government's closing argument, I think at least on six pages of a relatively short closing argument, they highlight this testimony. And they don't say, only consider it for these offenses. They say, consider this evidence, and this evidence is really damning. They not only do that, they bring in the race of the defendant, repeatedly in this case, including in closing argument. This was a case that, you know, the government in this examination has questions about the race, and every witness is asked, what's the race of the assailants? What's the race of the assailants? What's the race of the assailants? And in closing argument, the race of the assailants, they highlight the race of the assailants at the very beginning of their closing argument. This is a fence. What is that particular point that you just stressed? What does it have to do with the admission of the nurse's testimony? What it has to do is the analysis of whether reversal is appropriate, whether this evidence could have had a substantial effect on the, if this error had a substantial and injurious effect, whether there was a reasonable probability that the outcome would have been different. And I think limiting this kind of evidence would have had that, and if they can't get this report in, which is what they're trying to do, is they're trying to use these questions that they were asked for purposes of evidence collection for testimonial. It's exactly what Crawford is designed to prevent. It's what happened here. I was trying to remember, did the, I do recall that the nurse recorded that the victim told her that the race of the defendant was black. Did that evidence from the nurse come in? It did. In what form? In a question. What they did with this form was they basically, if you watch the testimony and put the form right next to it, they're just going down the form and asking everything that's on the form. And so it's de facto getting the form before the jury, but just having someone say what it is, and the defendant doesn't have a chance to question about the substance of it because the person who gave the information is no longer with us. With that, Your Honor, I will submit. Thank you. Can I just ask one question? Is it your position that all counts for which he was convicted? I think it would be our position. Not that, or is it only some? I think it would be our position that this calls into question all of the accounts, and we would urge the court to address all of the accounts. But certainly as to all of the sexual assault offenses, this would be relevant evidence. Because on any of these counts, none of the people identified Mr. Hill adding this kind of evidence had an impact. It was prejudicial, where it shouldn't even have been admitted. So I think it could affect all of the counts. Okay. Okay, thank you very much. The case just argued is submitted.
judges: HAWKINS, PAEZ, WATFORD